EDWARD DELAHUNT et al., Respondents, *v.* THE ÆTNA INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, Appellant.

Defendant insured the plaintiffs, who were common carriers, upon the cargo of a canal boat during a voyage from Buffalo to New York. The policy contained this condition : " If, in consequence of ice or the closing of navigation, the said voyage cannot be finished the same season, the risk to end at the place and at the time the voyage is stopped, three days being given to discharge." The boat was frozen in near Schenectady the latter part of November, and the captain and crew left it. On the 25th of that month the canal commissioners passed a resolution that the canal be closed December 5. The river remained open, and on December 7 the State officers cut a channel through the ice in the canal, and the boat was towed to Albany, where, after it was "hitched on to a steamboat," to be taken to New York, and while lying at the dock, it sank, in consequence of an injury it received after it left the canal, and not caused by the ice. In an action upon the policy, *held*, that the facts did not show, as matter of law, that the risk had terminated at the time of the loss ; that the condition in the policy had reference to an event which should actually end the voyage for the season — not to a temporary difficulty which could be overcome.

The insurance was by entries in a book accompanying an open policy of insurance, which, by its terms, required defendant to indemnify the persons whose names shall be indorsed thereon "as owner, advancer or

common carrier," or entered in a book kept for that purpose. The policy also authorized an assignment of the policy upon giving defendant notice. With each entry of insurance in the book a certificate was delivered to the insured, by its terms making any loss upon the risk specified therein payable to plaintiffs or order. Two of the certificates were assigned to the owners of the cargo, to secure their interests; the other, with the bill of lading, to a bank, to secure a draft discounted for plaintiffs; one of the owners procured additional insurance, and after the loss collected the same. Plaintiffs made advances to the captain of the boat on account of freight and also for expenses in getting the property through. By an agreement between the plaintiffs and the owners, the former became entitled to the certificates before suit brought, and thereafter they were returned to them and were produced on trial. *Held,* that plaintiffs were entitled to recover for the advances made and for their liability to the owners as reduced by the insurance collected.

The assignments of the certificates were without notice. *Held,* that said certificates, by their terms, gave consent to an assignment of an interest under the policy, and when transferred gave to the transferee a right to recover under them in case of loss; that as the assignments here were as collateral security when the objects of the transfers were accomplished, the insurer's liability did not cease, but they remained liable to plaintiffs to the amount of their interest; *i. e.,* the advances and the impaired value of the insured property.

(Argued December 1, 1884; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 8, 1882, which affirmed a judgment in favor of plaintiffs, entered on a verdict. (*Mem.* of decision below, 26 Hun, 668.)

This action was upon a policy of marine insurance.

The material facts are stated in the opinion.

*James Humphrey* for appellant. The policy must be construed according to its terms and the evident intent of the parties, to be gathered from the language used, and the court cannot extend the risk beyond what is fairly within the terms of the policy. (2 Pars. Cont. 357; Wood on Ins. 143, §§ 57, 59, 67; *Pearson* v. *Com. Ins. Co.,* L. R., 1 App. Cas. 498; *Phœnix Ins. Co.* v. *Slaughter,* 12 Wall. [U. S.] 404.) Whenever the voyage insured is abandoned or broken up by a

peril not insured against, the insurance ceases. (*Brown* v. *Vigne*, 12 East, 283; 2 Pars. Cont. 367; *Sherwood* v. *Mercantile Mut. Ins. Co.*, 66 N. Y. 630.) The plaintiffs cannot recover in this action, because they are not the parties in interest. (Code, § 449.) They cannot maintain this action as "trustees of an express trust." (Code, § 449; *Greenfield* v. *Mutual Ins. Co.*, 47 N. Y. 430.) The assignment of the insurance is effected by the indorsement and delivery of the certificate which vests in the assignee and holder the entire interest, legal and equitable, to the insurance. This is so whether made with, or without the consent of the insurer. (1 Wait's Act. & Def. 371; *Jossel* v. *Williamsburgh Ins. Co.*, 3 Hill, 88; *Smith* v. *Saratoga Ins. Co.*, id. 508; *N. Y. L. Ins. Co.* v. *Flack*, 3 Md. 341; 3 Mass., 558; 1 Johns. Cas. 373; 3 Black, 402.) The policy of insurance having been assigned before the loss and without notice to the defendant, the company was not by its terms bound to pay any loss upon it. (2 Pars. Cont. 355; *Lazarus* v. *Com. Ins. Co.*, 5 Pick. 81; *Ins. Co.* v. *Trask*, 8 Phila. 32; *Shotwell* v. *Jefferson Ins. Co.*, 5 Bosw. 247; 1 Hill, 497; 67 Penn. St. 373.) There was no waiver of this notice by defendant. (*Devens* v. *Merchants' Ins. Co.*, 83 N. Y. 169.) The defendant's objections to the admission of evidence were well taken, and the overruling them was error. The meaning of the word "bones" contained in the certificate could not be enlarged or explained by the proof given. (*Harris* v. *Turnbridge*, 83 N. Y. 100.) A motion for nonsuit may properly be granted at the close of the defendant's evidence. (*Rudd* v. *Davis*, 3 Hill, 287; affirmed 7 id. 529; *Wheeler* v. *Buckman*, 51 N. Y. 391; *People* v. *Cook*, 8 id. 67, 74.) There is no presumption that other evidence than what appeared in the case was given. (*Perkins* v. *Hill*, 56 N. Y. 87.)

*E. C. Sprague* for respondent. The facts proved were clearly sufficient to establish notice within the provision of the policy. (*Bennett* v. *Lycoming Mut. Ins. Co.*, 67 N. Y. 274.) The action of the company was a waiver of any defects in the

notice. (*Keeney* v. *Home Ins. Co.*, 71 N. Y. 396 ; *Pratt* v. *N. Y. C. Ins. Co.*, 55 id. 505 ; *Bush* v. *Westchester F. Ins. Co.*, 2 Thomp. & Crook, 629.) As the case does not assume to contain all the evidence produced upon the trial, it will be presumed that there was evidence sufficient to sustain the denial of a nonsuit. (*Mahoney* v. *People*, 3 Hun, 202 ; *Dalzel* v. *Raw*, 1 Thomp. & Crook, 4.) Evidence as to the meaning of the word bones was clearly competent. (*Lawrence* v. *Maxwell*, 53 N. Y. 21; Whart. on Ev., § 961, note 3961 *a*.) The custom of trade as shown was admissible. (Phillips on Ins., § 460.)

DANFORTH, J. The plaintiffs were common carriers, and the policy in question was issued to them under the name of E. Delahunt & Co. It took effect on the 3d and 7th of November, 1873. In terms it covered the cargo of the boat "James Maloney," during a voyage from Buffalo to New York, but contained a provision "that if in consequence of ice or the closing of navigation, the said voyage cannot be finished the same season, the risk to end at the place, and at the time the voyage is stopped, three days being given to discharge."

Ice formed, and the boat was frozen in three or four miles west of Schenectady during the latter part of November, and the captain and crew left the boat. On the 25th of that month, the canal commissioners, by resolution, determined that the canals of the State "be closed on Friday, December 5th." On the 7th of December, however, the State officers in charge opened the canal by letting in water and cutting a channel through the ice, and the "Maloney," with other boats, was towed by a tug to Troy, and thence down the river to Albany. It was there "hitched on to a steamboat," to be taken to New York, but before starting, and while lying at the dock, it careened over and sank. That a loss then occurred is not disputed, but the defendant contended at the trial, that by reason of the above circumstances the event had already happened, which by the clause quoted terminated the risk, and asked the

court to so hold as matter of law, and nonsuit the plaintiff. This was declined, and the defendant excepted. We think the exception cannot be sustained. The defendant undertook to bear the perils, not only of the canal, but of the river, and in framing the clause in question must be deemed to have had in view such event as would prevent the boat passing over either, and not a temporary difficulty which could be overcome. The insured had a right, and it was their duty, to make every effort to continue the voyage, notwithstanding the formation of ice and the obstruction of the boat by it. The river was open. The season for its navigation had not closed, and a qualification of the policy so restrictive of the rights of the insured, and prejudicial to the interests of commerce as that contended for by the appellant, should not be allowed in the absence of terms which will bear no other rational interpretation. Here, as the verdict of the jury shows, no damage to the boat was occasioned by the ice, and the cause of its destruction was injury received after it had escaped from its control and any danger from that source. Moreover, its arrival in safety at the open water of the river where "it sprung a-leak," was a practical demonstration that the completion of the voyage was not prevented by the ice nor the resolution of the commissioners that the canals be closed. There was, therefore, no inability to finish the entire voyage, nor was it in fact stopped save by a peril against which the defendant had undertaken to indemnify. But if the defendant thought otherwise, it was entitled to nothing more than a submission of the question to the jury as one of fact. (*Sherwood* v. *Mercantile Ins. Co.*, 66 N. Y. 630.) This was not refused. No doubt the defendant might have made an obstruction of the boat by ice for any fixed or definite period, or the official action of the canal board, events upon the mere happening of which the risk should cease. Had it done so, the argument of its counsel would have greater force. As its undertaking reads, neither circumstance derogates from its obligation unless by reason of it the voyage could not be pursued the same season. We have already seen that such effect did not follow either event.

It was also urged by the defendant as a ground of nonsuit "that the plaintiffs were not the owners of the policy and insurance upon which this action is brought, at the time of its commencement, and are not now the owners thereof, or entitled to maintain this action." The terms of the policy require the defendant to indemnify the persons whose names shall be indorsed thereon " as owner, advancer, or common carrier on goods," etc., on boat, " from place to place as indorsed " on the policy or in a book kept for that purpose, and declares that " this policy may be assigned." No names or other indorsements appear upon the policy, but with the policy a book was issued by the defendant, referring to it, and in substance declaring insurance on account of E. Delahunt & Co., and stating the time, boat, and trip as above mentioned, describing the property insured as " oats " and " bones," the amount on each and the premiums. The plaintiff, Delahunt & Co., paid the premiums, received the policy and book, and three certificates bearing even date with the entries in the book, the first of which, so far as material to any question before us, is in these words : " This certifies that E. Delahunt & Co. insured under and subject to the conditions of policy No. 8 (Risk No. 1923), issued by the Ætna Insurance Company, Hartford, in the sum $4,500 in board cargo of boat 'J. Maloney,' on oats, $3,500, at and from Buffalo to New York, $1,000, at and from Troy to New York. Loss, if any, payable to E. Delahunt & Co. or order, and return of this certificate.

" Countersigned at Buffalo, N. Y., this 3d day of November, 1873."

The second is upon " oats," the third on " bones," but except in these particulars and the amount of insurance, are similar to the first. The shipping bill ran from the master of the boat to the plaintiffs, and notice thereon to the consignee described the property as pledged to the Farmers and Mechanics' National Bank of Buffalo, as collateral security for an accompanying draft of $730.48, and that upon payment of the draft the claim of the bank would cease. The bill of lading and the certificate of $1,000 were also indorsed over to the bank as security ; the

certificate of $4,500 covering "oats," was assigned to Worthington, the one covering "bones" to Mr. Wannemacher, to provide for their respective interests in the property. Worthington procured additional insurance on the oats, and after the loss realized therefrom $4,315.02.

At the time of shipment the plaintiffs advanced to the captain of the boat $733.48 on account of freight, and the same was noted on the bill of lading. They also advanced on account of expenses in getting the property through $97. By an arrangement between Wannemacher and the plaintiffs, and Worthington and the plaintiffs before this action was commenced, the plaintiffs became entitled to the certificates which those parties held, and they were subsequently, although not until after suit brought, returned, and they produced them on the trial. The case was submitted to the jury as one in which the plaintiffs, if entitled to any thing, might recover for the advances made and for their liability to Wannemacher, as the owner of the bones for loss incurred on that property, and to Worthington the owner of the oats, for the residue of loss on them. The verdict rendered was for $1,700 and interest, in all $2,311.70. The defendant's counsel, at the close of the charge, asked "the court to charge that they (the plaintiffs) cannot recover the advances made or any interest they had in the property." The trial judge declined to do so, and an exception was taken. Upon this appeal no point is made upon that exception, and the argument for the appellant turns upon the ground stated in the motion for a nonsuit, or as it is now framed by its counsel, that "the plaintiffs are not the parties in interest."

It is conceded by the appellant that the contract of insurance was with the plaintiffs. The question raised by its counsel relates to the effect of the certificates. They refer to the policy, adopt its provisions, and are enforceable only according to its terms. In substance they embody consent of the insurers to an assignment by the assured of an interest under the policy, and when transferred by the latter, entitle the indorsee in case of loss to recover under them. The transfers, in this case, were

as collateral security, and when the debt was paid, or the purpose for which the transfer was made accomplished, the liability of the insurers under their contract did not necessarily cease, but continued. In any event, it is damage sustained by the party insured, and not by the indorsee or party appointed to receive the money that is recoverable from the insurers. This, upon the principle that a general policy on goods is sufficient to cover the interest of carriers on property intrusted to their care, would include damage done to such property by the perils insured against, and for which they were bound to make compensation to the owners, and also freight and other expenses incurred by them. In the case before us the plaintiffs are the parties insured. The amount otherwise due upon the policy has, it is true, been reduced by money received from other insurance on the property. It has been applied to that purpose, and so their liability as carriers has been diminished. But the freight and advances belong to them, and they remained interested in the policy, not only to the amount of those items, but for the impaired value of the insured property. So far as the freight and advances are concerned, they are the parties in interest, and as to the residue, they were at least proper parties plaintiff (*Eaton* v. *Alger*, 47 N. Y. 345), even if they were to be regarded only as equitable trustees for the other parties for the amount unpaid.

It is also argued by the appellant that the policy was assigned before loss, and without notice to the defendant, and hence is void under a condition of the policy, which requires such notice to be given. The evidence discloses no assignment of the policy. The plaintiffs at all times continued to be its owners, subject to the interest acquired by the assignees of the certificates. So far as those instruments affected the title, the defendant was not entitled to notice, because by the form in which they were issued the loss was made payable to such person as the insured should appoint.

We think no error was committed in the reception of evidence, and that the learned judge properly directed the jury to inquire whether the boat was navigated with ordinary

care and skill. That the defendant was liable to some one on its contract is apparent from the evidence, and no rule of law was violated by sustaining the verdict of the jury in favor of these plaintiffs.

The judgment should therefore be affirmed.

All concur, except RUGER, Ch. J., and RAPALLO, J., dissenting.

Judgment affirmed.